IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CIVIL ACTION NO. 3:18-CV-00271-GCM

Pennsylvania National Mutual Casualty
Insurance Company,

    Plaintiff,

    v.

Jose Castillo d/b/a
JJA Framing Company,
JJA Construction, Inc., and
JJA Framing Company,

    Defendants.

**DEFAULT JUDGMENT**

ORDER

This matter is before the court on the Plaintiff's Motion for Default Judgment [D.E. 12] and the memorandum filed in support of the Motion for Default Judgment [D.E. 12-1]. For the reasons discussed below, Plaintiff's motion is GRANTED.

BACKGROUND

Plaintiff Pennsylvania National Mutual Casualty Insurance Company ("Plaintiff Penn National") initiated this declaratory judgment action against Defendants Jose Castillo d/b/a JJA Framing Company, JJA Construction, Inc., and JJA Framing Company (collectively, the "JJA Defendants"), on May 24, 2018. Plaintiff Penn National seeks a declaratory judgment that certain policies of insurance issued by Plaintiff Penn National to the JJA Defendants do not provide coverage to the JJA Defendants for the claims asserted against the JJA Defendants in two related underlying construction defect actions captioned "*Oak Bluff Homeowners Association, Inc. v. Portrait Homes-South Carolina, LLC,* et al.," (C.A. No. 2013-CP-10-7067) and "*John F. Kelly, on behalf of himself and others similarly situated v. Portrait Homes-*

20596065.v1

*South Carolina, LLC,* et al.," (C.A. No. 2013-CP-10-7066), pending in the Court of Common Pleas for the County of Charleston, South Carolina (collectively, the "Underlying Construction Defect Litigation"). This case is brought pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §2201, *et seq*. and Rule 57 of the Federal Rules of Civil Procedure. The record shows that Plaintiff Penn National served JJA Defendants with process pursuant to Rule 4 of the Federal Rules of Civil Procedure on June 1, 2018. [D.E. 6, 7, and 8] The JJA Defendants did not file a responsive pleading to the Complaint, and the Clerk of Court entered an entry of default against the JJA Defendants on July 5, 2018. [D.E. 10] The Entry of Default was served on the JJA Defendants by U.S. Mail on July 9, 2018. [D.E. 11]

Plaintiff Penn National now moves for Default Judgment as against the JJA Defendants. This Motion for Default Judgment was filed on August 30, 2018, and also served on the JJA Defendants by U.S. Mail. The JJA Defendants have not appeared or defended this action in any way.

DISCUSSION

Upon default, the well-pleaded facts alleged in the Complaint are deemed admitted. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). Based upon Plaintiff Penn National's Complaint, the following facts are established.

The JJA Defendants were sued in two related construction defect civil actions captioned "*Oak Bluff Homeowners Association, Inc. v. Portrait Homes-South Carolina, LLC,* et al.," C.A. No. 2013-CP-10-7067 (the "Underlying HOA Construction Defect Action") and "*John F. Kelly, on behalf of himself and others similarly situated v. Portrait Homes-South Carolina, LLC,* et al.," C.A. No. 2013-CP-10-7066 (the "Underlying Construction Defect

Class Action") filed in the Court of Common Pleas for Charleston County, SC.[1] It is alleged in the Underlying Construction Defect Litigation that the JJA Defendants performed defective work on a townhome project located in Charleston, South Carolina, known as Oak Bluff.

On August 24, 2014, the JJA Defendants were personally served with a copy of the Summonses and Complaints in the Underlying Construction Defect Litigation. After the JJA Defendants failed to plead or otherwise respond to the Complaints in the Underlying Construction Defect Litigation, the court entered an Order of Default against the JJA Defendants in the Underlying Construction Defect Class Action on April 17, 2015, and entered an Order of Default against the JJA Defendants in the Underlying HOA Construction Defect Action on April 23, 2015.

Plaintiff Penn National issued the following commercial general liability policies to the JJA Defendants:

    a. Commercial General Liability Policy No. GL9 0601617 issued to "Jose Castillo d/b/a JJA Framing Company" at 3000 Colvard Parkway, Charlotte, NC 28269, effective from December 5, 2002 to March 2, 2005.

    b. Commercial General Liability Policy No. GL9 0601617 issued to "JJA Construction, Inc." at 11227 East Field Road, Hendersonville, NC 28078, effective from March 2, 2005 to December 5, 2006.

    c. Commercial General Liability Policy No. GL9 0601617 issued to "JJA Construction, Inc." at 9496 Highway 778 Lot 2, Ladson, SC 29456, effective from December 5, 2006 to December 5, 2008.

---

[1] The Underlying HOA Construction Defect Action and the Underlying Construction Defect Class Action are collectively referred to herein as the "Underlying Construction Defect Litigation".

d. Commercial General Liability Policy No. GL9 0649575 issued to "JJA Framing Company" at 9496 Highway 78 Lot 2, Ladson, SC 29456, effective July 9, 2008 to August 15, 2008.

e. Commercial General Liability Policy No. GL9 0649575 issued to "JJA Construction, Inc." at 9496 Highway 778 Lot 2, Ladson, SC 29456, effective from August 15, 2008 to November 3, 2008, and July 9, 2009 to July 21, 2009.

f. Commercial General Liability Policy No. GL9 0649575 issued to "JJA Construction, Inc." at 11227 Eastfield Road, Huntersville, NC 28078, effective from July 21, 2009 to July 9, 2010.[2]

The Penn National Policies contain "Conditions," including "Duties In The Event Of Occurrence, Offense, Claim Or Suit." Specifically, the Policies provide as Conditions of coverage that:

> **2.** **Duties In The Event Of Occurrence, Offense, Claim Or Suit**
>
> **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:
>
> **(1)** How, when and where the occurrence or offense took place;
>
> **(2)** The names and addresses of any injured persons and witnesses; and
>
> **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.
>
> **b.** If a claim is made or "suit" is brought against any insured, you must:
>
> **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

---

[2] The commercial general liability policies issued by Penn National to JJA from December 5, 2002 to July 9, 2010, will be collectively referred to as the "Penn National Policies" or the "Policies".

|     |     |     |
| --- | --- | --- |
|     | **(2)** | Notify us as soon as practicable. |
|     |     | You must see to it that we receive written notice of the claim or "suit" as soon as practicable. |
| **c.** | You and any other involved insured must: | |
|     | **(1)** | Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit"; |
|     | **(2)** | Authorize us to obtain records and other information; |
|     | **(3)** | Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and |
|     | **(4)** | Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply. |
| **d.** | No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent. | |

As a result, as a condition of coverage under the Penn National Policies, the JJA Defendants had a duty or obligation under the Policies to: (1) notify Plaintiff Penn National as soon as practicable of an "occurrence" which may result in a claim against it, (2) provide written notice to Plaintiff Penn National as soon as practicable of a claim or "suit" brought against it, (3) immediately send copies of any demands, notices, summonses, or legal papers received in connection with such a claim or "suit" to Plaintiff Penn National, and (4) cooperate with Plaintiff Penn National in the defense of such claim or "suit".

Notice and cooperation provisions in insurance policies, such as the provisions found in the Penn National Policies, have long been recognized as valid by North Carolina courts. "The purpose and intention of an insurance contract's notice provision is to enable the insurer to begin its investigation and to initiate other procedures as soon as possible after a claim arises, and to avoid any prejudice that might be caused by a delay in receiving notice." *S.C. Ins. Co. v. Hallmark Enterprises*, 88 N.C. App. 642, 645-46, 364 S.E.2d 678, 680, disc. review denied,

5

20596065.v1

322 N.C. 482, 370 S.E.2d 228 (1988) (citations omitted) *see also Lockwood v. Porter*, 98 N.C. App. 410, 411, 390 S.E.2d 742, 743 (1990). "[U]nless the insured or his judgment creditor can show compliance with the requirement, the insurer is relieved of liability." *Davenport v. Travelers Indemnity Co.*, 283 N.C. 234, 238, 195 S.E.2d 529, 532 (1973).[3]

The enforcement of notice provisions was specifically addressed by the Supreme Court of North Carolina in *Great American Ins. Co. v. C.G. Tate Construction Co.*, 303 N.C. 387, 279 S.E.2d 769 (1981) (*Great American I*), where it adopted a three-part test in order to determine whether an insurer is relieved of liability based upon the failure of the insured to comply with the notice requirements in an insurance policy. Under this three-part test, the court must first decide whether the notice was given as soon as practicable. *Id.* If not, the court must decide whether the insured has shown that it acted in good faith (i.e. had no actual knowledge that a claim might be filed against it). *Id.* Finally, if the good faith test is met, the burden shifts to the insurer to show that its ability to investigate and defend was materially prejudiced by the delay. *Id.*

In the *Great American II* case, the North Carolina Supreme Court affirmed the three-part test established in the *Great American I* case, and clarified each prong of the test. *Great Am. Ins. Co. v. C.G. Tate Construction Co.*, 315 N.C. 714, 340 S.E.2d 743 (1986) (*Great American II*). The North Carolina Supreme Court held in *Great American II* that under the first prong of the test,

---

[3] To the extent that South Carolina law applies to those policies issued by Plaintiff Penn National to the JJA Defendants in the State of South Carolina, South Carolina law is in accord with North Carolina law with regard to the enforcement of notice provisions in the insurance policies. Under South Carolina law, "breach of an insurance policy's notice clause automatically relieves the insurer of its obligations under the contract, including the payment of proceeds due, and the duty to defend and to indemnify the insured." *Wright v. UNUM Life Ins. Co.*, No. 2:99-2394-23, 2001 WL 34907077, at *2 (D.S.C. Aug. 31, 2001). In fact, South Carolina courts have held that "[n]o rule of law is more firmly established in this jurisdiction than that one suing on a policy of insurance, where the notice required by the policy is not timely given, cannot recover . . . ." *Prior v. S.C. Med. Malpractice Liab. Ins. Joint Underwriting Ass'n*, 407 S.E.2d 655, 657 (S.C. Ct. App. 1991) (*quoting Lee v. Metro. Life Ins. Co.*, 186 S.E. 376, 381 (S.C. 1936)) (holding that the insured was not entitled to coverage where he failed to provide timely notice of the claim and also failed to forward suit papers until approximately four months after he had received them); *Tucker v. State Farm Mut. Auto. Ins. Co.*, 232 S.C. 615, 616, 103 S.E.2d 272, 273 (1958) (finding that the insured's breach of the cooperation clause relieved the insurer of its coverage obligation under the policy).

"the first step in the *Great American* test simply requires the trial court to determine whether there has been any delay in notifying the insurer." *Great American II*, at 719, 340 S.E.2d at 747. The court went on to find that "[i]n most instances, unless the insurer's allegations that notice was not timely are patently groundless, this first part of the test is met by the fact that the insurer has introduced the issue to the court." *Id.* Next, the *Great American II* court held that the test of good faith involves a two-part inquiry: (1) Was the insured aware of possible fault, and (2) Did the insured purposefully and knowingly fail to notify the insurer. *Great American II*, at 720, 340 S.E.2d at 747. "[B]oth knowledge and the deliberate decision not to notify must be met for lack of good faith to be shown. *Id.*

Finally, the *Great American II* court held that if the insured did not act in good faith, then the insurer is relieved of its obligations to defend and indemnify the insured under the policy even if it was not prejudiced by the delay. *Id.* at 721, 340 S.E.2d at 748; *see also Digh v. Nationwide Mut. Fire Ins. Co.*, 187 N.C. App. 725, 654 S.E.2d 37, 40 (2007). However, if the insured establishes that it acted in good faith, then the burden shifts to the insurer to show that it was prejudiced by the delay. *Id.* Some relevant factors in determining whether the insurer has been prejudiced by the delay are: (1) the availability of witnesses; (2) the ability to discover other information regarding the incident; (3) the existence of official reports concerning the occurrence; (4) the preparation and preservation of demonstrative and illustrative evidence; and (5) the ability of experts to reconstruct the scene and the occurrence. *Great American I*, at 398, 279 S.E.2d at 776.

Similar to the present matter, in *Royal Ins. Co. of Am. v. Cato Corp.*, 125 N.C. App. 544, 481 S.E.2d 383 (1997), the insurance policy at issue included a condition for coverage that required the insured to "immediately send" copies of any legal papers received in connection with

7

a claim or suit to the insurer. *Id.* at 549, 481 S.E.2d at 386. The insured was served with a summons and complaint in a lawsuit, but did not notify its insurer of the suit until three months after it had been served and default had been entered against the insured. *Id.* The Court held that under these circumstances, the insured had failed to comply with the notice requirement in the policy to "immediately send" legal papers, and that the insurer had been materially prejudiced by the insured's failure to comply with the conditions in the policy for coverage. *Id.* As a result, the *Cato* court held that the insurer had no duty to defend or indemnify the insured in the underlying lawsuit. *Id.* at 549–50, 481 S.E.2d at 386–87.

Similar to the *Cato* case, the JJA Defendants failed to abide by any of the conditions for coverage in the Penn National Policies, and so Plaintiff Penn National is relieved of any coverage obligation under the Policies for the claims asserted in the Underlying Construction Defect Litigation under the three-part test set forth by the Supreme Court of North Carolina in *Great American I*. First, although the JJA Defendants were served with the summonses and complaints in the underlying litigation, the JJA Defendants did not just delay providing notice to Plaintiff Penn National of the underlying litigation and sending these suit papers to Plaintiff Penn National, but never provided any notice of the litigation to Plaintiff Penn National and never forwarded any suit papers to Plaintiff Penn National in connection with the litigation. Accordingly, there has clearly been some delay in the JJA Defendants notifying Plaintiff Penn National of the underlying litigation.

As to the second part of the test, the JJA Defendants have admitted that their failure to provide notice was not in good faith. However, even if the lack of good faith had not been admitted, the JJA Defendants were personally served with the summonses and complaints in the underlying litigation (and therefore, knew of the underlying litigation, that the plaintiffs
8

in the underlying litigation held the JJA Defendants responsible for their damages, and the existence of the Penn National Policies), yet still failed to notify Plaintiff Penn National of the underlying litigation or forward the suit papers received in the underlying litigation to Plaintiff Penn National. Under such circumstances, the JJA Defendants were aware of their possible fault, and still purposefully and knowingly failed to notify Plaintiff Penn National of the litigation. As such, the JJA Defendants did not act in good faith in failing to provide notice to Plaintiff Penn National of the underlying litigation or to forward suit papers received in connection with the litigation. Therefore, Plaintiff Penn National is relieved of any coverage obligation to the JJA Defendants under the Penn National Policies for the claims asserted against the JJA Defendants in the Underlying Construction Defect Litigation based upon the failure of the JJA Defendants to comply with the notice and cooperation requirements under the policies regardless of whether Plaintiff Penn National was prejudiced by such failure.

Furthermore, even if the JJA Defendants had acted in good faith, Plaintiff Penn National would still be relieved of any coverage obligation to the JJA Defendants under its policies because Plaintiff Penn National was prejudiced by the JJA Defendants' failure to provide notice and cooperate with Plaintiff Penn National under the third part of the *Great American* test. Because the JJA Defendants failed to respond to the complaints filed against them in the Underlying Construction Defect Litigation, and also failed to provide notice to Plaintiff Penn National of such litigation, Orders of Default have been entered against the JJA Defendants in the underlying litigation. As such, Plaintiff Penn National was completely deprived of the opportunity to investigate or defend the claims against the JJA Defendants.

Accordingly, coverage is not afforded to the JJA Defendants for the claims asserted against them in the Underlying Construction Defect Litigation because the JJA Defendants failed to

comply with the conditions for coverage under the Penn National Policies. Therefore, Plaintiff Penn National is entitled to a declaration that (a) the Penn National Policies do not afford coverage for the claims against the JJA Defendants in the Underlying Construction Defect Litigation, (b) Plaintiff Penn National is not required to defend the JJA Defendants in the Underlying Construction Defect Litigation, and (c) Plaintiff Penn National is not obligated in any way to pay any damages that may be awarded against the JJA Defendants in the Underlying Construction Defect Litigation.

## CONCLUSION

Plaintiff Penn National's Motion for Default Judgment is ALLOWED. It is hereby ORDERED, ADJUDGED, and DECREED that a declaratory judgment should be and the same is hereby entered in favor of Plaintiff Penn National, and the court hereby declares and rules that (a) the Penn National Policies do not afford coverage for the claims against the JJA Defendants in the Underlying Construction Defect Litigation, (b) Plaintiff Penn National is not required to defend the JJA Defendants in the Underlying Construction Defect Litigation, and (c) Plaintiff Penn National is not obligated in any way to pay any damages that may be awarded against the JJA Defendants in the Underlying Construction Defect Litigation.

The Clerk of Court is DIRECTED to close this case.

Signed: March 25, 2019

*Graham C. Mullen*
Graham C. Mullen
United States District Judge

20596065.v1